## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

FREDERICK SWITZER,

      Plaintiff,

v.                                  No. CIV-04-1067 MV/RHS

MARTIN CHAVEZ and
THE CITY OF ALBUQUERQUE,

      Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

      **THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment (Doc. No. 38, filed August 19, 2005). Having reviewed the briefs submitted by the Parties and the relevant law, and for the reasons given below, the Court shall **GRANT in part** and **DENY in part** Defendants' Motion. Defendants' Motion is granted to the extent it seeks summary judgment on Plaintiff's federal law claims. Defendant's Motion is denied to the extent it seeks summary judgment on Plaintiff's state law claims. Plaintiff's federal law claims are dismissed with prejudice, Plaintiff's state law claims are dismissed without prejudice, and this action is dismissed.

**Legal Standard**

      Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). When applying this standard, a court must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir.

1999).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof.  *Id.*

**Undisputed Facts**

Plaintiff admits the following material facts in Defendant's Memorandum in Support of Motion for Summary Judgment.  (*See* Response, Doc. No. 45, filed September 9, 2005, at 2).

Plaintiff retired from the Albuquerque Police Department ("APD") in 1997.  (Fact No. 1). In 2003, the New Mexico Legislature amended the law to permit retired law enforcement officers to return to work without monetary limitation.  (Fact No. 4).  Plaintiff applied for a position with the first class hired under the new law.  (Fact No. 5).  Plaintiff's application was rejected.  (Fact No. 6). Plaintiff appealed the rejection and was admitted to the academy.  (Fact Nos. 6 and 8).

When he submitted his application for the retired class, Plaintiff signed a Urinalysis Test Waiver which states that a urinalysis was required "as part of the hiring process for the Academy." (Fact No. 10).  Plaintiff "voluntarily and of [his] free will" submitted to the urinalysis on August 15, 2003.  (Fact No. 10).  Plaintiff also signed the Urinalysis Test Waiver indicating that recent use of illegal drugs would be sufficient reason to terminate him from the selection process.  (Fact No. 11). Plaintiff knew that, as a police officer, he was considered to be a safety sensitive employee.  (Fact No. 12).

On October 3, 2003, APD received the result of the drug test which was positive for opiates; Plaintiff does not dispute that the test was positive for Darvon.  (Fact No. 14).  The case was referred

2

to Internal Affairs for investigation.  (Fact No. 15).  The investigation disclosed that on September 30, 2003, while attending a social engagement, Plaintiff mentioned to his former physician that he had run out of the medicine which had been prescribed to Plaintiff, hydrocodone.  (Fact No. 16).  The physician told Plaintiff to take some of Plaintiff's wife's darvon.  (Fact No. 16).  Plaintiff intentionally took the darvon.  (Fact No. 16).  Plaintiff did not have a prescription for darvon.  (Fact No. 17).  Plaintiff did not subsequently obtain a prescription for darvon from the doctor to provide to APD.  (Fact No. 17).  The last time Plaintiff had been prescribed darvon was in approximately 1998.  (Fact No. 17).  The doctor who told Plaintiff to take the darvon was not Plaintiff's primary care physician and had not prescribed any medication for Plaintiff since at least April, 2003.  (Fact No. 20).  Plaintiff does not know if the doctor was aware of the dosage of Plaintiff's wife's prescription for darvon at the time the doctor told Plaintiff to take the darvon.  (Fact No. 21).

After Plaintiff tested positive for darvon, he was placed on administrative leave with pay.  (Fact No. 22).  In a letter dated October 20, 2003, Plaintiff was given notice of a pre-disciplinary hearing.  (Fact No. 23).  Plaintiff attended the pre-disciplinary hearing held November 12, 2003.  (Fact No. 24).  Plaintiff was given a full and fair opportunity to present his arguments and he was represented by counsel.  (Fact No. 24).

Plaintiff was charged with violating APD general orders regarding controlled substances and the City's drug testing policy for safety-sensitive employees.  (Fact No. 28).  Plaintiff was terminated for a positive drug test.  (Fact No. 34).  On December 11, 2003, Plaintiff appealed his termination to the City Personnel Board.  (Fact No. 38).  His appeal was denied based on Rule 306.2.  (Fact No. 38).

**First and Fourth Causes of Action - Federal Constitutional Claims**

In his First Cause of Action Plaintiff alleges that Defendant could only have Plaintiff undergo drug testing on a random basis or with probable cause. (Compl. ¶ 25). Plaintiff further alleges that in taking adverse employment action against Plaintiff as a result of the illegal drug testing, Defendant violated Plaintiff's rights under the Fourth (unreasonable search and seizure) and Fourteenth (deprivation of property without due process) Amendments of the United States Constitution. (Compl. ¶¶ 26-27). Plaintiff claims that those violations of his constitutional rights disrupted his employment and caused him economic damages. (Compl. ¶ 28). In his Fourth Cause of Action Plaintiff alleges that the drug testing was done without any probable cause, warrant or other legal process and that Defendant denied Plaintiff his right to appeal the termination without providing Plaintiff a meaningful opportunity to be heard, thereby denying him due process of law. (Compl. ¶¶48-49).

Plaintiff's Complaint does not identify the legal basis for his federal constitutional claims. However, 42 U.S.C. § 1983 provides a remedy to parties deprived of federal constitutional rights by a state official's abuse of his position while acting under color of state law. *See Haines v. Fisher*, 82 F.3d 1503, 1508 (10th cir. 1996). To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must show (1) the existence of a municipal policy or custom, and (2) a direct causal link between the policy or custom and the violation alleged. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993), *citing City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

In order to warrant liability, a municipal policy must be a policy statement, ordinance, regulation, or decision officially adopted and promulgated by a municipality's officers. *Lankford v. City of Hobart*, 73 F.3d 283, 287 (10th Cir. 1996). If the violation cannot be characterized as official

4

policy, then a municipality can still be held liable if the practice is so well settled as to constitute a "custom or usage" with the force of law.  *Lankford v. City of Hobart*, 73 F.3d 283, 287 (10th Cir. 1996) (*quoting Adickes v. S.H. Kress & Co.*, 394 U.S. 144 (1970).  In order to establish a custom, the actions must be persistent and widespread practices of city officials.  *Id.*  Municipal liability under § 1983 attaches where, and only where, a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

Unreasonable Search

The policy at issue in this case is Defendant City of Albuquerque's Substance Abuse Policy. (*See* Administrative Instruction No. 7-1-1, attached to Mot., Ex. C).  The Substance Abuse Policy requires that "[a]pplicants for City employment in safety-sensitive positions are subject to pre-employment drug testing."  (*Id.*).  The purpose of the Substance Abuse Policy is to "provide for a safer environment for the employees and the public" given that "the presence of certain drugs in the body system may pose serious safety and health risks not only to the user but to all those in contact with the user."  (*Id.*).

Plaintiff argues that application of the policy to Plaintiff was not permissible because Plaintiff was not an applicant seeking employment with Defendant City for the first time, but instead was a part-time employee of Defendant City "transitioning to a full-time position with the same department."  (Resp. at 8-11); *See Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989) (permissibility of particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests).  Plaintiff claims that because he was employed by Defendant City the previous six years as a part-time

community service aid, and prior to that had honorably retired in 1996 after serving twenty years as a City of Albuquerque police officer, the intrusive nature of the drug testing on his expectation of privacy outweighs Defendant City's interest in providing for a safer environment for the employees and the public when hiring police officers.  (Resp. at 8-11).  The Court disagrees.

The Supreme Court has held that suspicionless testing of employees who apply for promotion to positions that require the incumbent to carry a firearm is reasonable.  *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 679 (1989).  In *Von Raab* an employees union brought an action against the United States Customs Service to obtain an injunction and challenge the constitutionality of a drug-testing program that analyzed urine specimens of employees who applied for promotion to positions requiring the incumbent to carry a firearm.  *Id.* at 661-663.  The Supreme Court concluded that the public should not bear the risk that employees who may suffer from impaired perception and judgment will be promoted where they may need to employ deadly force and weighed this valid public interest against the interference with individual liberty that results from requiring such employees to undergo a urine test.  *Id.* at 666-667.  Because successful performance of their duties depends uniquely on their judgment and dexterity, Customs employees who are required to carry firearms cannot reasonably expect to keep from the Customs Service personal information that bears directly on their fitness.  *Id.* at 672 (employees who are required to carry firearms in the line of duty have a diminished expectation of privacy in respect to the intrusions occasioned by a urine test).

Plaintiff's argument that Defendant City's Substance Abuse Policy, requiring that applicants for City employment in safety-sensitive positions are subject to pre-employment drug testing, is unreasonable because he was already employed in a safety sensitive position by Defendant City is not persuasive.  *See Von Raab*, 489 U.S. at 679 (drug testing policy applied to current Customs

6

employees seeking promotions to positions that require incumbent to carry firearm). Plaintiff claims that the "City's interest in ensuring safety through drug testing plaintiff was not weighty" because he was not a new employee whose employment history was hidden from the City, and because Defendant City had a lengthy history and complete files on Plaintiff, and had an extended period of time to observe his work habits and performance. (Resp. at 10). In *Von Raab*, the Supreme Court characterized the government interest motivating the search as "compelling." *Von Raab*, 489 U.S. at 670. The phrase "compelling state interest," in the Fourth Amendment context, describes an interest that appears *important enough* to justify the particular search at hand, in light of other factors that show the search to be relatively intrusive upon a genuine expectation of privacy." *Veronia School Dist. 47J v. Acton*, 515 U.S. 646, 661 (1995) (*emphasis in original*). This Court agrees that the "public interest . . . demands effective measures to prevent the promotion of drug users to positions that require the incumbent to carry a firearm." *Von Raab*, 489 U.S. at 670 (customs employees who may use deadly force plainly discharge duties fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences). The fact that Plaintiff was currently employed by Defendant in another safety-sensitive position does not diminish importance of Defendant City's interest in enforcing their Substance Abuse Policy when hiring law enforcement officers. Furthermore, Plaintiff cites no legal authority identifying such an exception to the holding in *Von Raab*. Therefore, the Court shall grant summary judgment in favor of Defendants on Plaintiff's claim that application of Defendant City's Substance Abuse Policy to Plaintiff was an unreasonable search that violated the Fourth Amendment of the United States Constitution.

Deprivation of Property Interest Without Due Process

Plaintiff asserts a procedural due process claim stating "[b]ecause plaintiff was denied a right to appeal the termination decision, he was denied due process of law." (Compl. ¶ 49; Resp. at 12); *see also Mitchell v. City of Moore*, 218 F.3d 1190, 1198 (10th Cir. 2000) (procedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision; substantive due process guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision).

To determine whether Defendant City of Albuquerque has deprived Plaintiff of his due process rights, the Court must engage in a two prong inquiry. *See Garcia v. City of Albuquerque*, 232 F.3d 760, 769 (10th Cir. 2000). First, the Court must ask whether Plaintiff possessed a protected interest giving rise to due process protection. *See Id.* If that question is answered affirmatively, then the Court proceeds to the second inquiry: whether Defendant City of Albuquerque afforded Plaintiff an appropriate level of process. *See Id.*

The "standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment." *Garcia*, 232 F.3d at 769 (*citing Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."). Plaintiff's property interest, if any, in his employment was created and defined by the terms of his appointment. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 (1972) (where terms of respondent's appointment provided a termination date, did not provide for contract renewal

absent sufficient cause, and there was no state statute or university rule or policy that secured his interest in re-employment, respondent did not have a property interest protected by the Fourteenth Amendment that was sufficient to require the university authorities to give him a hearing when they declined to renew his employment contract).

Defendant City of Albuquerque set forth several facts to support their claim that Plaintiff was a temporary or probationary employee and, therefore, had no legitimate expectation of continued employment. (Mot. at 22-25; Reply at 11-12). Defendant City of Albuquerque hired Plaintiff in April 1999 under the job title "Community Service Assistant" with a "temporary" employment status. (Mot. at Ex. A, Plaintiff's Dep. at 7-8, Ex. B, affidavit of City Personnel Manager and Ex. B1, Human Resources Department Employment Information form regarding Plaintiff's employment with City). Under Defendant City's Personnel Rules and Regulations, temporary employees are given a termination date at the time of appointment and their length of service may not exceed two years. (Mot. at Ex. C). And, temporary employees are not entitled to any of the rights and benefits under the City's Personnel Rules and Regulations except for membership in a retirement plan. (*Id.*). Temporary employees are defined as unclassified employees. (Reply at 12, *citing* Merit System Ordinance § 3-1-6(C)(5)). "Unclassified employees are employees at will and serve at the discretion of the Chief Administrative Officer [and] Such employees have no property interest in continued employment and may be terminated for any or no reason." (Mot. at Ex. C, City' Personnel Rules and Regulations § 306.2). Plaintiff's employment classification did not change when he began in the academy and he remained classified as a Community Service Assistant until he was terminated in December 2003. (Mot. at Ex. B, affidavit of City Personnel Manager, and Ex. B1, Termination Notification). Plaintiff understood that as a temporary employee, he could be terminated at any time

and did not have access to the grievance process or a right to appeal.  (Plaintiff's Dep. at 51-52).

Prior to his termination, Plaintiff never received any kind of indication that his temporary status had

ended.  (Plaintiff's Dep. at 51-52).  Defendant City's Personnel Rules and Regulations provide that

an "employee serving a probationary period does not have a legitimate entitlement to continued

employment and may be terminated for any or no reason."  (Mot. at Ex. C, § 305).  "Failure [by the

department director] to submit the personnel action form [documenting  the completion of the

probationary period] will constitute dismissal of the employee."  (*Id.*).

Plaintiff argues that there are two material facts at issue.  (Resp. at 14-15).  One is whether

Plaintiff, after six years of employment with Defendant, should be categorized as a temporary

employee.  (*Id.*).  The other is whether Plaintiff, after six years of employment with Defendant, should

be considered a probationary employee.  (*Id.*).  Plaintiff claims that "[a]n analysis of the City of

Albuquerque's Merit System Ordinance, the applicable Rules and Regulations, and the definitions

given to the classifications of 'temporary', 'probationary' and 'permanent' employees result in

material questions of fact."  (*Id.* at 14).  Plaintiff cites § 306.3 from Defendant City of Albuquerque's

Personnel Rules and Regulations, which defines temporary employees as those "who were given a

definite termination date occurring less than two years after the date of hire."  (*Id.* at 14).  Plaintiff

then concludes, without bringing forward specific facts, that "any employee, like plaintiff here, who

was hired for an indefinite period of time, would be considered permanent and non-probationary after

the initial six months probationary period had expired."  (*Id.* at 15).  Plaintiff goes on to state "[t]hus,

under New Mexico case law, the issue of whether plaintiff could only be discharged for just cause,

after the appropriate grievance procedures were followed, presents a question appropriate for a fact

finder."  (*Id.* at 15).  However, Plaintiff does not cite the relevant New Mexico case law to which he

refers.

Plaintiff has not met his burden of presenting facts such that under the applicable law, a reasonable jury could find in his favor. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999) (a mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact). Here Plaintiff cites only one rule/regulation regarding temporary employees. The fact that Defendant City employed Plaintiff longer than the two year period stated in the rule indicates only that Defendant City did not terminate Plaintiff when it should have according to its own Rules and Regulations. It does not, by itself, show a genuine issue for trial as to whether Plaintiff was a temporary or permanent employee. Plaintiff does not present any other facts, point to any other City rules, regulations or policies, or cite any relevant case law to support his theory that his status as a temporary employee ended, that he was a permanent employee entitled to a post-termination hearing, and consequently, that he had a legitimate claim of entitlement to continued employment. The Court is not obligated to comb the record to make Plaintiff's argument for him. *See Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000). Therefore, the Court shall grant summary judgment in favor of Defendants with respect to Plaintiff's federal claim of deprivation of property interest without due process.

**State Law Claims**

The remainder of Plaintiff's claims are state law claims. In his First Cause of Action, Plaintiff alleges that Defendant violated Plaintiff's rights under Sections 4 (inherent right of possessing property), 10 (unreasonable search), and 14 (indictment and information, grand juries, rights of accused) of Article II of the New Mexico Constitution. (Compl. ¶ 27). Plaintiff's Second Cause of Action states a breach of contract claim. (Compl. ¶ 38). Plaintiff's Third Cause of Action states a

11

false light / defamation claim.  (Compl. ¶¶ 40-42).  Plaintiff's Fourth, and final, Cause of Action appears to be similar to his First Cause of Action in that it alleges unreasonable search and seizure and due process claims.  (Compl. ¶¶ 44-49).

Because it has granted summary judgment in favor of Defendants on all of Plaintiff's federal law claims, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction over a claim where it has dismissed all claims over which it has original jurisdiction); *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (generally, when district court dismisses the federal claims, leaving only supplemental state claims, the most common response has been to dismiss the state claims without prejudice); *United States v. Botefuhr*, 309 F.3d 1263, 1273-1274 (10th Cir. 2002) *quoting United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").  Accordingly, the Court will dismiss Plaintiff's state law claims without prejudice.

**IT IS SO ORDERED.**

**MARTHA VÁZQUEZ**
**CHIEF UNITED STATES DISTRICT JUDGE**